# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH A. BROWN, JEREMY J. BROWN, CORY A. BAUGH, WOODROW J. GRANT, and STEVEN T. THOMPSON,<br><br>     Plaintiffs,<br><br>     vs.<br><br>MILLER BREWING CO., ANHEUSER-BUSCH CO., ADOLPH COORS CO., BROWN-FURMAN CO., AMERICAN BRANDS INC., PEPSI-COLO (Pepsico), R.J.R. NABISCO, GALLO WINERY'S (Ernest and Julio Gallo),<br><br>     Defendants. | Case No. 1:12-cv-00605-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are several motions ripe for decision, including Defendants' Joint Motion to Dismiss the Complaint for Failure to State a Valid Claim. (Dkt. 53.) All parties that have appeared in this action have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 84.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed and fully considered the current record, the Court enters the following Order dismissing Plaintiffs' Complaint and addressing all other pending motions.

## SUMMARY OF DECISION

Plaintiffs Keith A. Brown, Jeremy J. Brown, Woodrow J. Grant, and Steven T. Thompson are four Idaho Department of Correction inmates, and Plaintiff Cory A. Baugh is a former inmate. Each alleges to have starting drinking as a youth and to have become an alcoholic. Together, they bring a tort action sounding in products liability law against several manufacturers and distributors of alcoholic beverages (the "manufacturers"), who allegedly failed to warn Plaintiffs that consuming alcohol can be habit-forming or addictive, with the risk of causing far-reaching personal injuries and other harm, including lengthy periods of incarceration. (Dkt. 1.)

Plaintiffs acknowledge that a key element in supporting a failure-to-warn claim is alleging facts demonstrating that the manufacturers had a duty to warn consumers that alcohol can be habit-forming and addictive. They agree that the current state of the law is that manufacturers have no legal duty to warn of the commonly-known dangers of alcohol abuse. They ask the Court to draw a distinction between the commonly-known dangers of alcohol abuse, and what they allege is a non-obvious danger, *i.e.*, that some individuals are predisposed to alcoholism, and that persons so predisposed may become addicted upon their first drink, regardless of their intention to drink responsibly. Plaintiffs seek $1 billion in damages, injunctive relief in the form of a new label to be required upon all alcoholic beverages warning that alcohol is habit-forming and addictive, and a judicial declaration that alcohol is habit-forming and addictive.

Because this is a civil dispute between citizens of different states, it is brought under the federal diversity jurisdiction statute, which means that the Court applies the substantive law of the state of Idaho to decide Plaintiffs' tort claims. *See* 28 U.S.C. § 1332. Idaho products liability law, which draws directly upon Section 402A of the Restatement (Second) of Torts, requires a warning only if the danger of using a particular product is not obvious. Although the Idaho Supreme Court has not yet addressed a case factually similar case to this one, the Court concludes from its review of current Idaho products liability law that the Idaho Supreme Court would not depart from the common law rule that the dangers of alcohol, including the risk of becoming an alcoholic, are obvious, regardless of whether one is predisposed to that disease, and that manufacturers need not warn of obvious dangers.

In reaching its conclusion, the Court draws support from factually similar cases from jurisdictions across the United States. While several intermediate state courts have proposed an expansion of the duty of alcoholic beverage manufacturers to answer to different types of alcohol abuse – the dangers of which were not actually known or heeded by injured or deceased drinkers – no highest level state appellate court has upheld such an expansion, relying on the obviousness of the dangers associated with alcoholic beverages, known to mankind for ages.

After a thorough review of Idaho law and the law of other jurisdictions, the Court concludes, as a matter of law, that manufacturers have no duty to warn in the manner alleged in the Complaint, because it is commonly known to the public that alcohol poses

an obvious danger – encompassing many different subcategories of danger – to those who choose to consume it. The Court declines to draw subtle distinctions among the various dangers associated with alcohol, because each distinct danger derives from the same obvious danger. In addition, because the distinctions from which a new duty might arise are myriad, the Court concludes that requiring a warning for each distinction is impracticable.

Further, the Court concludes that manufacturers' efforts to persuade the public to purchase their products by using enticing alcoholic beverage advertisements do not mask the obvious dangers of consuming alcohol and do not give rise to a higher duty of the manufacturers of alcohol. Modern society has elected to permit alcohol as a legal substance available to consumers, albeit with restrictions upon age, amount, and location. In so doing, society has placed responsibility in legislative bodies to regulate the manufacture, sale, and use of alcohol, and to define the legal consequences of drinking alcohol.

For all of these reasons, the Court will not recognize a common law duty different from or beyond that already put in place by state and federal legislatures. Consequently, Defendants' Motion to Dismiss is granted. Plaintiff's Complaint is dismissed with prejudice, without opportunity to amend, because the Court has determined that amendment would be futile.

# PLAINTIFFS' PRELIMINARY MOTIONS

**1.    Plaintiffs' Motion for Sanctions (Dkt. 43)**

Plaintiffs argue that, because Defendants Brown-Forman Corporation, Anheuser-Busch Companies, LLC, and E. & J. Gallo Winery did not seek an extension of time to answer the Complaint until the last day of the answer period (Dkt. 35), those Defendants should be sanctioned by being ordered to return the cost of service to Plaintiffs. However, Defendants need show only good cause for such an extension of time when the request is filed within the answer period. *See* Fed. R. Civ. P. 6(b)(1)(A). Defendants asked for an extension within the answer period, and have put forward good cause for their request. Accordingly, the Motion for Sanctions is denied.

**2.    Plaintiffs' Motion for Entry of Default (Dkt. 44)**

Defendants Brown-Forman Corporation and Anheuser-Busch Companies, LLC, were granted an extension of time to file an answer or motion to dismiss on September 10, 2013, and the Court specifically ordered that no motions for entry of default be filed. (Dkt. 39.) Nonetheless, Plaintiffs filed a Motion for Entry of Default on September 16, 2013. (Dkt. 44.) Such Motion has no adequate legal and factual basis, and it is denied.

**3.    Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss (Dkt. 60)**

Plaintiffs sought additional time to respond to the Motion to Dismiss. (Dkt. 60.) The Response was filed on November 25, 2013. (Dkt. 64.) Good cause appearing, the Motion is granted and the Response is deemed timely filed.

**DEFENDANTS' MOTION TO DISMISS**

Brown-Forman Corporation (sued as "Brown-Furman Co."), Anheuser-Busch Companies, LLC (sued as "Anhesuer-Busch Co."), and E. & J. Gallo Winery (sued as "Gallo Winery's, Ernest and Julio Gallo), joined by PepsiCo (sued as "Pepsi-colo"), move the Court for dismissal of the Complaint for failure to state a claim upon which relief can be granted. (Dkt. 53, 67.) In addition, PepsiCo moves for dismissal based upon failure to serve in a timely manner. (Dkt. 67.)

**1.      Standard of Law under Rule 12**

As a general proposition, to survive a motion to dismiss under Federal Rule of Civil Procedure 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In deciding a motion to dismiss for failure to state a claim, the court generally should not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not originally appended to) the complaint, when the authenticity of such a document is not in question. *Id*. at 622-23. A court may also take judicial notice of matters of its own records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records,

such as records and reports of administrative bodies, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

Plaintiffs have filed a Response to the Motion to Dismiss that includes exhibits. They also have filed a Sur-reply, and a document entitled "Issues of Material Facts in Dispute." (Dkts. 60-1, 64, 80, 81.) In their Reply to those filings, the Defendants ask the Court to strike the "Issues of Material Facts in Dispute," because the pending motion is filed under Federal Rule of Civil Procedure 12(b), rather than as a motion for summary judgment filed under Rule 56. (Dkt. 71, p. 2., n. 2.) Even so, to protect their interests in the event that the Court considers the motion under Rule 56, Defendants have filed a response to Plaintiffs' "Issues of Material Facts in Dispute." (Dkt. 70.)

Plaintiffs have not sought leave to convert the Motion to Dismiss into a motion for summary judgment under Rule 56. Defendants argue that the Plaintiffs' submissions are improper in the context of a motion to dismiss, which is to be determined solely upon the pleadings and attached exhibits.

When the party filing or responding to a motion to dismiss submits exhibits beyond the pleadings, the Court has the discretion to decide whether to exclude or consider those exhibits in deciding the motion to dismiss. If the exhibits are considered, then the Court must give notice to the parties that it intends to convert the motion to dismiss into a motion for summary judgment. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1144-45 (9th Cir. 2003).

The threshold question presented in the Motion to Dismiss – that is, whether Defendants had a duty to warn the general public of the habit-forming and addictive nature of alcoholic beverages, or whether they had no duty because of the obviousness of the danger – is a matter of law to be decided by the Court.[1] This includes the sub-issue of whether it is common knowledge among the general public that alcohol may be habit-forming and addictive. *See Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1182 (Idaho 1999) (the risks that a ladder might slip or a person might fall from the ladder are so obvious that, as a matter of law, the defendant had no obligation to warn of them); *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Texas 1991) (under Texas law, the existence of a duty to warn or instruct as to the proper use of a product is a question of law).

The exhibits submitted with Plaintiffs' response consist of alcoholic beverage magazine advertisements, photographs of alcoholic beverage containers, articles about alcoholism, and copies of various laws and regulations. Because these are not exhibits to a pleading, the Court in the exercise of its discretion will exclude them as evidentiary submissions. To the extent that Plaintiffs intend to rely on the exhibits to support the merits of their claims, the submissions are inappropriate at the motion to dismiss stage. Plaintiffs must first demonstrate that they have alleged facts that state a cognizable claim for relief before they are entitled to have the merits of any claim heard.

---

[1] Plaintiffs mistakenly assert in their "Issues of Material Facts in Dispute" that such a question is one of fact. (Dkt. 60-1.)

Further, even assuming that Plaintiffs have submitted the exhibits to support their arguments in opposition to the Defendants' motion to dismiss, the exhibits are unnecessary for such a purpose. Plaintiffs have thoroughly explained the theory of their case in the Complaint, Response, and Sur-reply. Plaintiffs contend that (1) alcoholic beverage manufacturers advertise the pleasurable rather than the dangerous aspects of their products; (2) the implications of alcohol use upon individual health, upon the public health generally, and upon public safety are the subject of scientific study; (3) alcohol is a highly-regulated product because of risks associated with its use; and (4) there are risks associated with the use of alcohol, and the dangerousness of alcohol use is the same whether, for example, the alcohol is found in a large keg of beer or in a bottle of beer.

2.    **As a Matter of Law, There is No Duty to Warn as Alleged by Plaintiffs in their Complaint**

A.    *Plaintiffs' Particular Allegations*

Plaintiffs allege that Defendants had a duty to attach a warning label to their alcoholic beverages warning consumers of the possibility that a person could become addicted to drinking alcohol even if he or she drank reasonably, due to the possibility of a predisposition to developing the disease of alcoholism. Plaintiffs contend that if Defendants had attached such a warning, none of the Plaintiffs would have taken his first drink as a youth. In their own words, "[t]his case is about the protection of the American public from a product that when consumed in an amount that is not abusive becomes addictive to approximately 14% of the American public." (Dkt. 64, p. 6.)

**MEMORANDUM DECISION AND ORDER - 9**

Defendants, however, contend that alcohol manufacturers and distributors have no duty to warn consumers of obvious or commonly-known potential dangers of drinking alcohol, such as alcoholism or the prospect of prolonged or excessive use of alcoholic beverages. In response, Plaintiffs ask rhetorically: "Is it known that there is approximately 14% of the American Public, who, upon drinking 6 to 8 ounces of ethyl alcohol is addicted for the rest of their life?" (Dkt. 64, p. 6.) Plaintiffs "agree that there is no LEGAL duty to warn of the COMMONLY KNOWN dangers of alcohol abuse and alcoholism," (capitalization in original), but they argue that manufacturers have a duty to warn nonetheless, because (a) some individuals are predisposed to becoming alcoholics; and (b) such a predisposition is not a commonly-known danger. (*Id.*)

**B.**    ***Idaho Law Does Not Support Recognition of a Common Law Duty to Warn Owed by Alcohol Manufacturers, as that Duty is Argued by Plaintiffs***

This is a diversity action, and the alleged events giving rise to the claim for relief occurred in Idaho. Therefore, the Court looks to Idaho law to determine whether such a duty exists. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

The Idaho appellate courts have not spoken to the precise issue of whether such a duty to warn as argued by Plaintiffs exists in regard to the manufacture and sale of alcoholic beverages. However, "the concept of strict liability for products liability cases as embodied in the Restatement of Torts, Second, § 402A (1965)" has been adopted "[as] a proper basis for liability in Idaho." *Rindlisbaker v. Wilson*, 519 P.2d 421, 428 (Idaho 1974) (citing *Shields v. Morton Chemical*, 518 P.2d 857 (Idaho 1974)); *see also Bryant v.*

*Technical Research Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981) (same, applying Idaho law).

Under § 402A, even a product that is safely designed and manufactured can be dangerously defective if the manufacturer has reason to know of the dangerous propensities of the product but fails adequately to warn purchasers or users. *Rindlisbaker*, 519 P.2d at 427-28; Restatement (Second) of Torts, § 402A cmt. h (1965). However, the duty to warn of a product's dangerous propensities "is limited to situations wherein the danger is not obvious." *Rindlisbaker*, 519 P.2d at 428. "[I]f the danger is obvious, or if the danger is known to the person injured, the duty to warn does not attach." *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 546 P.2d 54, 60 (Idaho 1975) (citations omitted).[2]

Of importance to this case, § 402A specifically refers to alcohol as an illustration of a product in which there is no duty to warn of dangerous propensities because of the obvious nature of such a danger. "*Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics.*" Restatement (Second) of Torts § 402A cmt. i (1965) (emphasis added). Further:

> [A] seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period

---

[2] The Idaho Supreme Court has not yet addressed or adopted the more recent Restatement (Third) of Torts: Products Liability (1998) in a products liability case. However, Defendants point to comment j and the official Reporters' Note to comment j of the Restatement (Third) of Torts: Products Liability § 2 (1998) to show that the general rule regarding obvious risks is consistent with the Restatement (Second) of Torts § 402A. (*See* Defendants' Memo, Dkt. 53-1, p. 9.) The outcome of the Motion to Dismiss would be the same under both the Restatement (Second) of Torts and the Restatement (Third) of Torts.

of time have a deleterious effect upon the human heart.

Restatement (Second) of Torts § 402A cmt. j (1965).

### C. *The Law of Other Jurisdictions Does Not Support an Extension of the Duty of Alcohol Manufacturers to Warn the Public*

In sum, there is nothing in existing Idaho products liability law to support the relief sought by Plaintiffs in their Complaint. Such a lack of precedent to support Plaintiffs' claims is significant, but the Court also examines the decisions of other jurisdictions to help inform its decision upon how Idaho law would decide this question. *See, e.g., All-States Leasing Co. v. Bass*, 538 P.2d 1177, 1181 (Idaho 1975) (Idaho Supreme Court "persuaded [to adopt a position] after a careful review of [out-of-state] authorities . . . and the weight of authority"). The Court has reviewed other duty to warn cases involving the manufacture and sale of alcohol relied upon by Defendants in support of their position, and has conducted its own research.

Plaintiffs argue that none of the cases cited by Defendants addresses their *particularized* claim – that this is not simply a case about individuals who choose to overindulge in alcohol, but rather is about those persons who are immediately susceptible to becoming addicted to alcohol even if they intend to drink responsibly. The same purported distinction in the risk of harm, and the alleged duty to warn, was raised in a Texas case in which plaintiffs were chronic alcoholics who sued a distiller seeking damages allegedly caused by alcohol as an addictive drug. *McGuire v. Joseph E. Seagram & Sons, Inc*., 790 S.W.2d 842 (Tex. App. 1990), *rev'd* 814 S.W.2d 385 (Tex. 1991).

In *McGuire*, the plaintiffs alleged that the defendant distillery had a duty to warn consumers that:

> (1) Continued use or excessive use of alcohol would cause cirrhosis of the liver; (2) Alcohol is a drug; (3) Alcohol is a depressant; (4) Alcohol causes diseases of the stomach and duodenum; (5) Alcohol inhibits medical treatment; (6) Alcohol is toxic to the brain cells and tissues; (7) Alcohol is toxic to tissues of the stomach, liver and heart; (8) Drinking alcohol for pleasure or recreational purposes may lead to psychological and physical dependency; (9) Alcohol compromises the immune system; (10) Some people are genetically predisposed to alcoholism; (11) Psychological and social factors may predispose a person to alcoholism; (12) Alcohol is harmful to health; (13) Over two (2) drinks per day is harmful to health; (14) They failed to warn of the signs and symptoms of alcoholism; (15) They failed to instruct on the symptoms of alcoholism; (16) They failed to instruct on safe use of the drug; (17) They failed to warn that alcoholism causes marital discord, family problems and financial problems; (18) They failed to warn that alcoholism will deteriorate or destroy conjugal relations; (19) They failed to warn that alcoholism is a lifetime disease and that recovery is impossible; (20) That "denial" prohibits addicts from recognizing an addiction and receiving treatment; (21) That treatment of the addiction is very costly and beyond the economic means of most alcohol addicts; (22) They failed to warn of the latent, hidden and concealed hazards, defects and dangerous effects of the drug alcohol; (23) They failed to warn Ronald McGuire's family and friends of the signs and symptoms of alcoholism; (24) They failed to instruct Ronald McGuire, his family and friends to encourage him to seek help at the first symptoms of alcoholism.

*Id.* at 845.

Notably, the defendant distillery in *McGuire* acknowledged "that there are health dangers in drinking too much and too long and, *for some people, in drinking at all*." 814 S.W.2d at 387 (emphasis added). Nonetheless, the trial court dismissed the case for failure to state a claim. On intermediate appeal, the Texas Court of Appeals reversed that decision. Given the "[v]astly increasing complexities in relationships between and among

human beings (coupled with entire new fields of scientific knowledge and empirical wisdom)," the intermediate appeals court said there was reason to reexamine the law and to "implant correlative duties." 790 S.W.2d at 852. That ruling did not ultimately prevail, however, as the Texas Supreme Court overturned the Court of Appeals, reasoning:

> From ancient times, the danger of alcoholism from prolonged and excessive consumption of alcoholic beverages has been widely known and recognized. *See generally* G. Austin, *Alcohol in Western Society From Antiquity to 1880: A Chronological History* 3–45 (1985); M. Lender & J. Martin, *Drinking in America: A History* 16–21, 36–40, 44–46, 64–74 (1982). *See also Ex Parte Townsend*, 64 Tex.Crim. 350, 144 S.W. 628, 631–33 (1911). Consequently, we hold that, because the danger of developing the disease of alcoholism from prolonged and excessive consumption of alcoholic beverages is and has been generally known and recognized, it is within the ordinary knowledge common to the community. Therefore, under the limited circumstances present in this cause, Seagram had no duty to warn or instruct of this particular danger arising from the prolonged and excessive consumption of alcoholic beverages.

814 S.W.2d at 388.

D.    ***Plaintiffs' Efforts to Distinguish their Claims from Similar Claims Decided under Existing Case Law Are Unconvincing***

In the present case, Plaintiffs apparently seek to differentiate (and require warnings for) people predisposed to the disease of alcoholism from those who are not. That argument, however, simply misses the mark. The *obvious* danger of drinking alcohol is the same for every person, regardless of whether or not a person might have a predisposition (of whatever nature) for alcoholism. That such a danger is arguably even more profound for an alcoholic does not change the underlying obviousness of the danger – whether for those who might be predisposed to alcoholism or for those not so

predisposed. Plaintiffs would have the Court create a common law duty to require a warning to any consumer that (a) alcohol has "dangerous properties," and (b) "if you drink this product that you will get a disease." (Dkt. 64, pp. 10, 13.) The disconnect, of course, is that the second prong of such a warning is already subsumed by the first – *i.e.*, "alcohol has dangerous properties." That danger, in the view of this Court and in the view of every other court that has rendered a final decision upon this particular issue, is an obvious one.

The invitation to recognize a common law duty to warn such as Plaintiffs bring forward here has been made elsewhere. *See, e.g., Cook v. MillerCoors, LLC,* 872 F.Supp. 2d 1346, 1351 (M.D. Fla. 2012) (because the dangers of alcohol are well-known, "MillerCoors owed no duty to warn against the known risks of consuming alcohol, even to excess"); *Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565, 570 (Iowa 1986) ("We are not persuaded . . . that it is practical to expect a wholesale purveyor of alcoholic beverages to devise an adequate warning of the particular tolerance of each consumer. . . . [A]lthough persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should in the exercise of reasonable intelligence, understand what type of conduct places them in jeopardy of violating the law.") (internal quotation marks and alteration omitted); *Malek v. Miller Brewing Co.*, 749 S.W.2d 521, 524 (Tex. App. 1988) ("[B]eer drinkers . . . are bound, as a matter of law, to recognize the danger of intoxication. Given the[] precedents, we hold that the degree of intoxication to

be expected from any particular brand of beer [including "lite" beer] does not require a duty to warn, or give rise to a fact question.").

No highest level state appellate court in the country has chosen to make subtle distinctions as to the degree of use, or differences between particular users of alcohol (including the possibility of propensities for alcohol abuse), which is what Plaintiffs ask this Court to do here. Further, no lower state court has done so and survived higher court review. The Court acknowledges that scientific study has added to the general discussion of the perils and dangers of alcohol, and that such study has included additional research into the etiology of alcoholism. Such information, however, does not remodel or diminish the obvious danger already known.

E.    *Widening the Scope of the Duty to Warn is Impracticable*

Legal commentary upon the Texas Supreme Court's rejection in *McGuire* of the plaintiffs' invitation to widen the scope of warnings for alcohol has reasoned that the nuances of the issue, such as Plaintiffs seek to exploit in this case, leave no sensible legal or factual blackboard upon which to chalk a duty to warn:

> Whatever else may be said for it, the case just described is not a legitimate failure-to-warn case. Given the irrefutable fact of widespread knowledge of the dangers of chronic alcohol abuse, a claim of inadequate warning could proceed only if the court were willing to predicate liability based on either: (1) the need for defendants to supply consumers with highly specific information that generally is subsumed within broader categories of risks well-known to society; or (2) the desirability of adding tiny increments of information to the store of public knowledge. Many of the allegations in the Texas beverage alcohol case called for specificity that added nothing more than useless detail to what were generally understood risks. As numerous courts and commentators have noted, detailed warnings

that impart no new information are costly to society.

That warnings should not be cluttered with needless detail seems elementary. However, what about the claims based on aspects of alcoholism that are less well known or more controversial? Consider, for example, the contention that distillers should have warned that "some people are genetically predisposed to alcoholism." Many people probably are unaware of the possibility of biological predisposition to addiction. Even so, the demand that it be included in the warning is impractical. Opinions differ widely regarding what causes alcohol addiction. If biological predisposition is to be the subject of a warning, should not consumers also be told that many scientists believe that the evidence to support the biological predisposition theory is inconclusive? Moreover, if evidence suggests a strong correlation between chronic alcoholism and cultural and social class characteristics, should this information, although offensive to many, become part of the warning label? As these examples show, one always can identify some tidbit of information or detail of recent medical knowledge that a manufacturer might have included. A cause of action that one can establish merely by claiming that some tiny increment of information should be added to the product label is virtually identical to product-category liability. In truth, the product is faulted not because the warnings of its dangers are inadequate, but rather because the product is controversial and deemed by some to fail the overall risk-utility test for society.

James A. Henderson, Jr. and Aaron D. Twerski, *Closing the American Products Liability Frontier: The Rejection of Liability without Defect*, 66 N.Y.U. L. Rev. 1263, 1324-25 (Nov. 1991) (footnotes omitted).

This Court agrees. It would be next to impossible to create an effective warning label that would warn of the myriad combinations of alcohol use and of human characteristics that might contribute to alcoholism. And, even if it could be done, it would be unnecessary, because the danger of alcoholism is subsumed in the general dangers of alcohol commonly known to the public.

**MEMORANDUM DECISION AND ORDER - 17**

**F.**     *Advertising that Entices the Use of Alcoholic Beverages Does Not Give Rise to a Higher Duty to Warn of the Dangers Inherent in Consuming Alcohol*

Nor does Plaintiffs' argument that Defendants' advertising focuses upon the pleasurable nature of their products support a higher duty to warn against the perils of alcoholism. In *Gawloski v. Miller Brewing Co.*, 644 N.E.2d 731 (Ohio App. 1994), the court explained:

> A common awareness and understanding of the dangers associated with prolonged and excessive alcohol use has existed in our culture for centuries. Our nation continues to inform its citizens of those dangers, supporting the community's common knowledge with well-documented and highly publicized scientific and statistical information that repeatedly warns of the detrimental physical, psychological, and emotional effects caused by prolonged and excessive alcohol use. Even though we acknowledge that beer advertising is pervasive in our society, we hold that, as a matter of law, a beer manufacturer's commercial images, although enticing, are not enough to neutralize or nullify the immense body of knowledge a reasonable consumer possesses about the dangers of alcohol. Therefore, a reasonable consumer could not, as a matter of law, ignore basic common knowledge about the dangers of alcohol and justifiably rely upon beer advertisements and their idyllic images to conclude that the prolonged and excessive use of alcohol is safe and acceptable.

*Id*. at 736 (internal citations omitted).

Plaintiffs point to nothing that might suggest the Idaho Supreme Court would view this issue any differently from the jurisdictions that have confronted similar claims based on the relationship between alcohol advertisements and warnings about alcohol abuse.

**G.**     *Society has Chosen to Place Responsibility in Legislative Bodies to Regulate the Manufacture, Sale, and Use of Alcohol, and to Define the Consequences of Drinking Alcohol*

With few exceptions, such as selling alcohol to a minor or an obviously intoxicated person, the general rule of law in the United States has been the same for decades – the individual who makes a personal choice to drink alcohol is responsible for the consequences that follow, whether small or great.[3] As described by the Texas court in *Brown-Forman Corp. v. Brune*, 893 S.W.2d 640 (Tex. App. 1994):

> Alcoholic beverages are dangerous products. Many human tragedies can be traced to an individual's use of alcohol. Nevertheless, this country has made a political decision to allow alcoholic beverages to be sold in the marketplace.

> \* \* \*

> Considering the extensive involvement of the federal and state government in regulating alcoholic beverages, we conclude that the subject of warnings on alcoholic beverages and placing instructions for use on an alcoholic beverage container should be left to the legislative process. The issues relevant to this case have for so long been political issues we conclude that courts are ill-equipped to develop effective and feasible warnings and instructions.

> A former generation of Americans found that [the] evils [of whiskey] outweighed [] advantages to be derived from using whiskey as a beverage and made a political decision forbidding its manufacture and sale for such purposes. But the noble experiment of prohibition did not work and [prohibition was] . . . repealed. This again represented a political judgment. . . .

---

[3] For example, Idaho's Dram Shop Act specifically provides: "The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons. . . ." I.C. § 23-808(1). The Act further provides that "No claim or cause of action . . . shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives." I.C. § 23-808(4)(a).

*Id.* at 646, 647 (alterations in original).

Although there is no place for recognition of a common-law duty as is sought here by Plaintiffs, there is also no mistaking the fact that alcohol manufacturers' duties as to sale of and the extent of the warnings concerning the consumption of alcohol have been imposed through legislative action. Indeed, the very fact of the extensive regulation of the sale and use of alcohol is further evidence that the danger of the use of alcohol is already known by the general population, including the setting of minimum ages for the consumption of alcohol; restrictions upon when, to whom, and what kind of alcohol can be sold; and the imposition of criminal penalties for being under the influence of alcohol when engaging in certain activities, such as driving.

**3.     Conclusion**

Against that backdrop, and consistent with the common law rule described in § 402A of the *Restatement (Second) of Torts*, this Court concludes that Idaho law would not depart from the long-standing and widely-applied rule described in this decision. Furthermore, the Court is mindful of the admonition that "[f]ederal courts should 'hesitate prematurely to extend the law . . . in the absence of an indication from the state courts or the state legislature that such an extension would be desirable.'" *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (quoting *Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1238 (9th Cir. 1989)).

Accordingly, for all of the foregoing reasons, the Court concludes that Plaintiffs have failed to state a claim upon which relief can be granted. Dismissal is appropriate under Rule 12(b)(6). The Court need not consider whether Defendant PepsiCo was timely served with the Complaint, nor is there need to decide the pre-emption and statute of limitations issues.

## CONSIDERATION OF AMENDMENT AND REMAINING MOTIONS

It remains for the Court to decide whether to dismiss Plaintiffs' Complaint with or without prejudice. In this Circuit, "plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

In addition, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). That leniency recognizes the difficulty the pro se litigant may face in fashioning a pleading when unschooled in the law and inexperienced in the process. Such leniency cannot, however, open a door to the courtroom that the law otherwise does not recognize.

Hence, given the Court's ruling described above as to the absence of any duty to warn such as Plaintiffs have claimed, the Court must consider whether giving Plaintiffs an opportunity to file a third amended complaint would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (a pro se pleading may be dismissed without notice of the

deficiencies and an opportunity to amend if a complaint "lacks merit entirely" and cannot be saved by amendment). In this particular context – that is, the question of whether any amendment would simply be a futile amendment – the Court has considered those exhibits filed by Plaintiffs which Plaintiffs contend are evidence that alcohol can be habit-forming and addictive, that Defendants do not disclose in their advertising the habit-forming or addictive nature of alcoholic beverages, and that alcohol is a highly-regulated product because it is dangerous. (Exhibits to Dkt. 64; Dkt. 79.) The Court reviewed such exhibits for additional arguments or evidence that might be gleaned from such materials that would support amendment of Plaintiffs' Complaint so as to overcome the threshold legal infirmity that otherwise exists. However, after such review the Court concludes that the exhibits add nothing to reframe the nature of the obvious danger of alcohol use in a way that would give support to the type of duty to warn for which Plaintiffs argue.

Accordingly, the Court will dismiss Plaintiffs' claims in this case with prejudice, that is, they cannot be refiled. Further, the proposed First and Second Amended Complaints seeking to correct the names of the unserved defendants will not be allowed, as the claims in such proposed Amended Complaints simply raise the same theories against the unserved defendants as those asserted against the parties who have appeared. Such claims, therefore, regardless of service of process, are also subject to dismissal and could not be saved by amendment. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) (upholding "dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had

appeared"); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

Plaintiffs' "Motion for Declaratory Relief" seeks relief which is not properly pursued by motion, but rather can be pursued only by adding an additional count to the existing Complaint. In addition, the "declaratory relief" Plaintiffs seek, even if added to their Complaint, seeks a remedy that – for the reasons already described in this decision – could not be successful in any event.

The Court will not strike Plaintiffs' Sur-reply (Dkt. 81). In the context of this case, where plaintiffs are proceeding pro se and the defendants are represented by multiple law firms, the Court allows pro se plaintiffs that additional opportunity to explain the theory of their case. The Court has considered the Sur-reply in the manner described in this decision, consistent with applicable rules and in the exercise of the Court's discretion. Accordingly, the Court denies Defendants' Motion to Strike the Sur-reply (Dkt. 85).

In summary, the Complaint is dismissed with prejudice, and the following motions are denied as moot: Plaintiffs' Motion to Allow Complaint to be Amended (Dkt. 46); Second Motion to Allow Complaint to be Amended (Dkt. 49); Plaintiff's Motion to Re-issue Summons (Dkt. 45); Plaintiff's Second Motion to Re-issue Summons (Dkt. 48); and Plaintiffs' Motion for Declaratory Relief. (Dkt. 66).

**ORDER**

1.  Plaintiffs' Motion for Sanctions (Dkt. 43) is DENIED.

2.  Plaintiffs' Motion for Entry of Default (Dkt. 44) is DENIED.

3.  Plaintiffs' Motion to Re-issue Summons (Dkt. 45) and Second Motion to Re-issue Summons (Dkt. 48) are DENIED as MOOT.

4.  Plaintiffs' Motion to Allow Complaint to be Amended (Dkt. 46) and Second Motion to Allow Complaint to be Amended (Dkt. 49) are DENIED as MOOT.

5.  Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss (Dkt. 60) is GRANTED. The Response (Dkt. 64) is considered timely.

6.  Plaintiffs' Motion for Declaratory Relief (Dkt. 66) is DENIED as MOOT.

7.  Defendants' Motion to Strike Sur-reply (Dkt. 85) is DENIED.

8.  Defendants' Motion to Dismiss (Dkt. 53) and the Joinder (Dkt. 67) are GRANTED.

9.  Plaintiffs' Complaint is DISMISSED, with prejudice.

DATED: **January 17, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge